OPINION OF THE COURT
Andrew V. Siracuse, J.
The petitioner in this case is caught in a situation almost *301 worthy of Kafka. He is suing for restoration of his driver’s license, which was revoked this year by the Department of Motor Vehicles for an offense that took place in 2001. The facts are relatively simple, but the dates are important and the specifics of each event equally so.
Through what he claims was inadvertence the petitioner let his car insurance lapse on December 5, 2000, and a suspension notice was sent to him. He claims that he never received this notice. On January 2, 2001, he was involved in a car accident and was charged with driving without insurance, driving without a license, and a traffic offense. He pleaded guilty to the latter two charges in Victor on February 1, 2001. In the interim he went to a local office of the Department of Motor Vehicles seeking some form of driver’s license; he is a child protective worker who must drive to field assignments, and in addition his wife is an epileptic and is unable to drive. Before the court appearance and his application to the Department the petitioner had restored his insurance and compensated the other driver in the accident. The Department therefore issued him a restricted use license on January 16, 2001. On April 9, 2001 his full license was restored.
On March 29, 2002 — virtually a full year after the restoration of his license — petitioner’s license was once again revoked, based on the allegation that on January 2001 he was involved in an accident while operating a motor vehicle without insurance. He is not eligible for a restricted use license because he had received one within the previous three years.
The respondent argues that the recent revocation was proper. All its actions are mandatory under various sections of the Vehicle and Traffic Law, and it has no discretion to alter them. Furthermore, there is no inconsistency or double punishment in its actions. The revocation was for the January 2, 2001 offense — involvement in an accident while driving without insurance — while the suspension arose from the December 5, 2000 offense, which does not involve actual operation of the vehicle; neither preempts the other.
While it may be strictly true that none of the individual actions taken by the Department were improper in themselves, their combination under these facts produces a truly irrational result. The petitioner applied for and received a restricted use license after the January arrest, and his full license was restored to him more than two months after his conviction for the January accident. As the respondent admits, “as of that *302 date the Department of Motor Vehicles had not taken any action * * * based upon proof that he had been operating his motor vehicle on January 2, 2001.”
The respondent, however, does not explain why no such action was taken within a reasonable time after the petitioner’s conviction. Had it so elected, the petitioner would have been able to apply for a restricted use license in the context of his conviction, and would not have run afoul of the three-year rule. His need for a second restricted use license is the result not of repeated offenses but of the Department’s long delay in acting on information which they had available to them for more than a year.
In addition, it is disingenuous of the Department to discriminate between suspension of a driver’s license for failure to maintain insurance coverage and revocation for driving without insurance, at least if this distinction is meant to justify the two different revocations (rather than suspensions) of the petitioner’s license. As the notice sent to the petitioner states, a restricted use license is not available to those whose license is suspended. Instead, a fee and proof of coverage are required, and the suspension is then lifted.
At oral argument counsel for the Department argued that Vehicle and Traffic Law § 318 provided for a restricted use license in the case of both suspensions and revocations. This is not, in fact, clear from the statute. The only mention of a restricted use license in section 318, as it currently stands, is in subdivision (15):
“Notwithstanding any provisions of this section, a restricted use license or privilege of operating a motor vehicle in this state may be issued to a person who has had his license or such privilege revoked or suspended pursuant to any provision of this section in accordance with article twenty-one-A of this chapter.”
When one consults section 530, the section that constitutes article 21-A of the Vehicle and Traffic Law, one discovers that, as the notice to petitioner had implied, a restricted use license in the context of section 318 is available for revocations only:
“A person whose driving license or privilege of operating a motor vehicle in this state has been heretofore suspended or revoked pursuant to the provisions of section five hundred ten of this chapter or whose driver’s license or privilege has been revoked pursuant to section three hundred *303 eighteen of this chapter and for whom the holding of a valid license is a necessary incident to his employment, business, trade, occupation or profession, or to his travel to and from a class or course at an accredited school, college or university or at a state approved institution of vocational or technical training or enroute to and from a medical examination or treatment as part of a necessary medical treatment for such participant or member of his household, as evidenced by a written statement to that effect from a licensed medical practitioner may thereafter apply for and may be issued a restricted use license * * * ” (emphasis supplied).
Section 510 refers to judicial revocations of driving privileges.
There is no truly satisfactory way of reconciling these two provisions, but the court holds that the specific language of section 530 controls, as this section is the only one that addresses restricted use licenses in detail. It therefore must reject respondent’s argument that, contrary to its own notice, such licenses may be granted to those whose driving privileges are suspended under section 318. Thus, the petitioner could legally have received the restricted use license only if his license had been administratively revoked or judicially revoked or suspended.
There is no evidence of another offense which would merit revocation of a license however, none upon which the Victor court made any order of revocation, and on the evidence of the Department records nothing was communicated from any court to the Department.
The Department must, then, have granted the restricted use license on the basis of its own procedures; but the record shows no revocation entered before March 29, 2002, only a suspension. If the petitioner’s license had not been revoked in January 2001, his restricted use license was completely unnecessary. It would be error pure and simple for the Department to issue a restricted use license in the context of a license suspension under section 318, and obviously unfair to deny the petitioner such a license a year later, when a proper revocation was imposed, simply because the respondent had mistakenly required him to obtain one the year before.
The only alternative explanation would be that the respondent’s issuance of a restricted use license in January 2001 was proper because petitioner’s license had been revoked. But since there was no other offense meriting revocation, both a 2001 re *304 vocation and the March 29, 2002 revocation would have to have been imposed because of the January 2, 2001 incident. This, too, would be an injustice.
The court holds that the Department of Motor Vehicles acted arbitrarily and capriciously in delaying its revocation of the petitioner’s license, in essence punishing him twice for the same events, and in penalizing him for its own errors. The petitioner is entitled to the immediate restoration of his driver’s license. His attorney may draft an order granting this relief, with costs.